IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| COLE BEZNER,<br>　　PLAINTIFF,<br><br>v.<br><br>JOHN DOE COMPANY a/k/a MIDLAND ARBITRATION,<br>DEBT MANAGEMENT PARTNERS, LLC, and<br>HARTFORD CASUALTY INSURANCE COMPANY,<br>　　DEFENDANTS. | CASE NO.:<br>3:19-cv-02107 |

## COMPLAINT AND JURY DEMAND

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. This action arises out of the violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Texas Finance Code by JOHN DOE COMPANY using the unregistered fictitious business name of "Midland Arbitration," and Debt Management Partners, LLC ("DMP").

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

5. Plaintiff resides in this District.

### PARTIES

6. Plaintiff, Cole Bezner ("Plaintiff"), is an adult individual residing in Dallas County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

7. DMP is a Delaware company.

8. As will be described below, DMP purchased an Account allegedly owed by Plaintiff from a third-party for the purpose of collecting on that Account to make a profit.

9. The principal purpose of DMP is the collection of debts using the mails and telephone and other means.

10. DMP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

11. DMP is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and as that term is defined by Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tx. Fin. Code § 392.001(7).

12. The identity of JOHN DOE COMPANY is currently unknow to Plaintiff, but is known to co-defendant DMP. Discovery will quickly identify the proper identity of this party.

13. JOHN DOE COMPANY, at all times relevant hereto, used the unregistered fictitious business name "Midland Arbitration" in its dealings with Plaintiff.

14. Hereinafter, JOHN DOE COMPANY is referred to as "Midland."

15. As will be described below, Midland called Plaintiff and engaged Plaintiff in telecommunication in order to collect an old debt from Plaintiff that was previously owed to a third-party.

16. Midland was attempting to make a profit off of its communication with, and collection from, Plaintiff.

17. The principal purpose of Midland is the collection of debts using the mails and telephone and other means.

18. Midland regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

19. Midland is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

20. Defendant Hartford Casualty Insurance Company ("Hartford") is the surety company for the bond DMP has on file with the Texas Secretary of State, bond number 20BSBGV8871. Hartford is liable for acts committed by DMP pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto, as well as any other applicable law.

21. Hartford is a foreign entity that can be served in the state of Texas via its registered agent, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas, 75201.

## FACTUAL ALLEGATIONS

22. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account (hereinafter the "Account").  Specifically, plaintiff believes the account was a Money Key payday loan obtained to pay for various personal effects, but was not used for any business or commercial purposes.

23. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

24. The Account allegedly went into default with the original creditor, Money Key.

25. After the Account allegedly went into default, the Account was purchased by DMP for collection.

26. DMP placed with or otherwise transferred the Account to Midland to negotiate a settlement of the Account with Plaintiff on DMP's behalf.

27. Plaintiff admits the existence of the Account, but disputes the amount Defendants attempted to collect from him.

28. Plaintiff requests that Defendants cease all further communications regarding the Account.

29. During the one year prior to the filing of this complaint, more specifically in approximately September and October 2018, Midland caused voicemail messages to be left with Plaintiff's relatives informing them of the existence of the debt.

30. The voicemail left for Plaintiff's sister stated:

> Hello hi. Hi howdy. My name Benjamin I'm a compliance officer in the state of Texas. I'm actually contacting you in regards to a case that's going to be filed against Cole Bezner. Now by law I need to make him aware that once his case number 3 3 9 8 5 4 is filed it does become a matter of public record and there is also an order of locations scheduled for him. Now like I said this case is actually being filed against Cole Bezner but I was reaching out to you as a point of contact because it is a matter of public record and your name is somehow affiliated with their case. Now Mr. Bezner does still have the legal right to contact the filing party. However once the case is discharged from their office that will no longer be an option. Now, it's unfortunate because I don't even know if he's aware that this is taking place. I have yet to get a hold of him. So if you do speak with Cole it would be in his best interest to contact the office here immediately before all his legal rights are forfeited pertaining to this case. This is a legal notification by telephone and it will be documented down on the case. Now one more time the attorney's number to call is 8 4 4 3 3 5 2 0 0 2. Referencing his case number 3 3 9 8 5 4 Thank you.

31. The voicemail above amounted to an improper disclosure to a third party of the existence of the Account.

32. In addition to the voicemail left on plaintiff's sister's phone, Midland also left similar messages on Plaintiff's mother's phone. These messages left for Plaintiff's relatives were substantially similar to the ones described above that were left for Plaintiff.

33. Plaintiff was completely embarrassed when his relatives informed him they had received these calls.

34. Midland left a substantially similar voicemail for Plaintiff. The voicemail left for him stated:

> Hello, this message is called Cole Bezner. My name is Benjamin I'm a compliance officer in the state of Texas. I'm contacting you in regards to a pending case being filed against you. Case number 3 3 9 8 5 4. Now once that case is filed it will become a matter of public record. There is also an order of location issued for you in Dallas County and the address that we have here on file. Now I am actually scheduled to come out to North Moore drive tomorrow morning. Now I need you to sign off on some legal documentation but you do still have the legal right to contact the filing party prior to my arrival tomorrow. So, if this is not a valid address or if you need to make any other arrangements regarding your availability in the morning tomorrow then it is imperative that you do contact the attorney's office immediately before a default decision is rendered on your behalf. Now once again your case number is 3 3 9 8 5 4 and the number to contact is 8 4 4 3 3 5 2 0 0 2. Cole, this is a legal notification by telephone and you will be located unless I am told otherwise. Good luck.

35. These messages were false and deceptive as no case had been filed against Plaintiff and the Account had not become a matter of public record. Further, there was no "order of location" and the caller was not "scheduled to come out" to Plaintiff's location. There also was no "legal documentation" and there was no "attorney" working on the Account and no legal rights would be forfeited if the did not return the call.

36. Plaintiff called back to Midland after receiving these calls and was told by Midland's employee:

    a. Let me get the file from the attorney. Looks like we do have a case pending scheduled for processing.

    b. Had to pull the file from the attorney.

    c. Claim that's been filed for a lawsuit involving a breach of contract.

    d. Before filing, Money Key, wants to make sure this was intentional

    e. Going to process the claim through the courts.

    f. We do the litigation process on these cases.

    g. You were contacted by a compliance officer…they're in the process of having you served…I want to get a stop order over there.

    h. [payment] allows me to get a cease and desist order over to the county.

    i. The lawsuit that is being filed is for more than $3,000 because the state laws on the bad check and the attorneys fees

    j. Court will enforce the judgment.

    k. Said they are not a collection agency

37. These statements made in this call were false and deceptive.

38. By making all of the statements detailed above, Midland indirectly or directly told Plaintiff that a lawsuit had been filed or immanently would be filed against him.

39. The communications described above would cause the least sophisticated consumer to believe that a lawsuit had been filed or immanently would be filed against him, that an attorney was working on recovery the Account for Midland, that a process server was about to serve him or her at work or at home, that a crime had been committed related to "bad checks" and that involuntary enforcement proceedings against Plaintiff were imminent.

40. As of the filing of this Complaint, no lawsuit has been filed against Plaintiff on the Account.

41. At the time Midland made the statements detailed above, neither Midland, nor the creditor on whose behalf Midland was collecting, had any intent to sue Plaintiff on the Account.

42. In every communication with Plaintiff, Midland failed to inform Plaintiff that Midland was a debt collector, that Midland was attempting to collect a debt and/or that any information obtained would be used for the purpose of debt collection. In fact, Midland specifically denied that it was a debt collector in one communication.

43. Midland's collection practices caused Plaintiff to suffer fear, anxiety, stress, sleeplessness, mental anguish mild depression and/or distraction from normal life.

44. Midland's sole purpose for making the statements was to intimidate Plaintiff into making a payment on the Account.

45. Midland's purpose for calling Plaintiff was to attempt to collect the Account.

46. The telephone calls described above each constituted a "communication" as defined by FDCPA § 1692a(2).

47. DMP directly or indirectly, exerted influence over Midland and caused Midland to act in the manner that it did with respect to Plaintiff.

48. DMP knew that Midland repeatedly or continuously engaged in collection practices as described above.

49. During all times pertinent hereto, DMP (a) created the collection policies and procedures used by Midland and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection

operations of Midland, (c) oversaw the application of the collection policies and procedures used by Midland and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Midland and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Midland and its employees and agents in connection with its common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by Midland and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

50. The only reason that Midland and/or its representative(s), employee(s) and/or agent(s) made telephone call(s) to Plaintiff was to attempt to collect the Account.

51. The only reason that Midland and/or its representative(s), employee(s) and/or agent(s) had telephone conversation(s) with Plaintiff was to attempt to collect the Account.

52. Midland conducted all of its collections without a surety bond on file with the Texas Secretary of State.

53. Midland conducted all of its collections without a surety bond on file with the Texas Secretary of State.

54. All of the conduct by Midland and/or DMP and/or their employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

55. DMP had actual knowledge that Midland repeatedly or continuously engaged in acts or practices prohibited by Chapter 392 of the Texas Finance Code.

56. As a consequence of Defendants' collection activities and communication(s), Plaintiff seeks damages and attorneys fees and costs pursuant to 15 U.S.C. § 1692k and damages, an injunction, attorneys fees and costs pursuant to Tex. Fin. Code § 392.403.

## RESPONDEAT SUPERIOR

57. The representative(s) and/or collector(s) at Midland were employee(s) and/or agents of Midland at all times mentioned herein.

58. The representative(s) and/or collector(s) at Midland were acting within the course of their employment at all times mentioned herein.

59. The representative(s) and/or collector(s) at Midland were under the direct supervision and control of Midland at all times mentioned herein.

60. The actions of the representative(s) and/or collector(s) at Midland are imputed to their employer, Midland.

61. DMP was aware of and profited from the collection methods and practices used by Midland's employees.

62. Midland acted at all times as an agent of DMP.

63. The actions of Midland are imputed to DMP.

## COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. §1692, et seq. BY JOHN DOE COMPANY A/K/A MIDLAND ARBITRATION

64. The previous paragraphs are incorporated into this Count as if set forth in full.

65. The act(s) and omission(s) of Midland and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)& (3)&(4)& (5)&(7)&(8)&(10)&(11)&(13) and §1692g(a).

66. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Midland.

### COUNT II:  VIOLATIONS OF THE TEXAS FINANCE CODE
### BY JOHN DOE COMPANY A/K/A MIDLAND ARBITRATION

67. The previous paragraphs are incorporated into this Count as if set forth in full.

68. The act(s) and omission(s) of Midland and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code §392.101 and §392.301(a)(3)&(7)&(8) and §392.302(1) and §392.304(a)(4)&(5)&(8)&(12)&(13)&(14)&(17)&(19).

69. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against Midland enjoining it from future violations of the Texas Finance Code as described herein.

70. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from Midland.

71. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from Midland.

72. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

### COUNT III:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)
### BY JOHN DOE COMPANY A/K/A MIDLAND ARBITRATION

73. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Midland is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion).  Midland intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

74. Plaintiff suffered actual damages from Midland as a result of the intrusion on Plaintiff's privacy.

### COUNT IV:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY DEBT MANAGEMENT PARTNERS, LLC

75. The previous paragraphs are incorporated into this Count as if set forth in full.

76. By influencing and/or controlling the conduct of Midland, DMP is liable for the act(s) and omission(s) of Midland and its representative(s), employee(s) and/or agent(s) for violations 15 U.S.C. § 1692c(b) and 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)&(3)&(4)& (5)&(7)&(8)& (10)&(11)&(13) and §1692g(a).

77. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from DMP.

### COUNT V:  VIOLATIONS OF THE TEXAS FINANCE CODE BY DEBT MANAGEMENT PARTNERS, LLC

78. The previous paragraphs are incorporated into this Count as if set forth in full.

79. By influencing and/or controlling the conduct of Midland, DMP is liable for the act(s) and omission(s) of Midland and its representative(s), employee(s) and/or agent(s) for violations of Tex. Fin. Code §392.101 and §392.301(a)(3)&(7)&(8) and §392.302(1) and §392.304(a)(4)&(5)&(8)&(12)&(13)&(14)&(17)&(19) and §392.306.

80. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against DMP enjoining it from future violations of the Texas Finance Code as described herein.

81. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from DMP.

82. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from DMP.

83. Pursuant to Tex. Fin. Code §392.403(e), Plaintiff seeks statutory damages of not less than $100 for each violation of the chapter in which Tex. Fin. Code §392.403(e) is codified.

### COUNT VI:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY DEBT MANAGEMENT PARTNERS, LLC

84. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, DMP is liable to Plaintiff for colluding with Midland to invade Plaintiff's privacy (intrusion on seclusion).  DMP intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

85. Plaintiff suffered actual damages from DMP as a result of the intrusion on Plaintiff's privacy.

### COUNT VII:  IMPUTED LIABILITY OF HARTFORD CASUALTY INSURANCE COMPANY FOR LIABILITY OF DEBT MANAGEMENT PARTNERS, LLC

86. The previous paragraphs are incorporated into this Count as if set forth in full.

87. The act(s) and omission(s) of DMP and its representative(s), employee(s) and/or agent(s) in violation of Tex. Fin. Code §392.101 and §392.301(a)(3)&(7)&(8) and §392.302(1) and §392.304(a)(4)&(5)&(8)&(12)&(13)&(14)&(17)&(19) and §392.306 are imputed to Hartford pursuant to Tex. Fin. Code § 392.102.

88. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Hartford.

## EXEMPLARY DAMAGES

89. Exemplary damages should be awarded against Midland and DMP because the harm with respect to which Plaintiff seeks recovery of exemplary damages resulted from malice (which means that there was a specific intent by Midland and DMP to cause substantial injury or harm to Plaintiff) and/or gross negligence (which means that Midland's and/or DMP's actions and/or omissions (i) when viewed objectively from Midland's and/or DMP's standpoint at the time of the acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others and (ii) were such that Midland and/or DMP had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others).

## JURY TRIAL DEMAND

90. Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

91. Judgment in favor of Plaintiff and against John Doe Company a/k/a Midland Arbitration as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

e. Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

f. An injunction permanently enjoining Midland following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

g. Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

h. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

i. Such other and further relief as the Court deems just and proper.

92. Judgment in favor of Plaintiff and against Debt Management Partners, LLC as follows:

a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d. Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

e. Statutory damages of not less than $100 for each violation of the chapter in which Texas Fin. Code §392.403(e) is codified;

f. An injunction permanently enjoining DMP following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

g. Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

  h. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

  i. Such other and further relief as the Court deems just and proper.

93. Judgment in favor of Plaintiff and against Hartford Casualty Insurance Company as follows:

  a. Statutory damages in the amount of not less than $100 for each violation of Tex. Fin. Code chapter 392, pursuant to Tex. Fin. Code § 392.403;

  b. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

  c. Such other and further relief as the Court deems just and proper.

        Respectfully submitted,

        THE WOOD FIRM, PLLC

        /s/ Jeffrey D. Wood
        Jeffrey D. Wood, Esq.
        ArkBN: 2006164
        209 Hubbard Drive
        Heath, TX  75032
        TEL:  682-651-7599
        FAX:  888-598-9022
        EMAIL:  jeff@jeffwoodlaw.com
        Attorney for Plaintiff